UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 18-CR-30009-FDS |
| | ) |
| JUAN RAMOS & another, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER CONCERNING DEFENDANT'S *EMERGENCY* MOTION FOR PRE-TRIAL RELEASE DUE TO RISK OF COMPLICATIONS FROM POTENTIAL COVID-19 INFECTION

Defendant Juan Ramos was arrested on March 21, 2018 (Dkt. No. 19). He is charged by a second superseding indictment with conspiracy to distribute and to possess with intent to distribute more than 500 grams of cocaine (Dkt. No. 101). On May 18, 2018, I ordered Mr. Ramos detained based on findings that the government had shown by a preponderance of the evidence that he posed a risk of flight and by clear and convincing evidence that he would be a danger to the community if he was released pending trial. The reasons for these findings are set forth in the court's Order of Detention (Dkt. No. 43). At this time, Mr. Ramos has a trial date of June 22, 2020 (Dkt. No. 159).

On March 23, 2020, Mr. Ramos filed an emergency motion for release from custody pending trial on the grounds that medical conditions place him at risk for complications arising from his potential infection with COVID-19 while incarcerated (Dkt. No. 165 at 1). The court authorized the government to respond orally to the defendant's motion. The court held a telephonic hearing on the defendant's motion on March 25, 2020. Mr. Ramos attended by telephone and, after a colloquy, waived his right to be present in person at the hearing on the motion (Dkt. No. 167). At the conclusion of the hearing, the court took the motion under

1

advisement.  The premise of the defendant's motion is that the COVID-19 pandemic represents a change in circumstances or new evidence that warrants reconsideration of the court's decision to detain Mr. Ramos pending trial.  For the reasons set forth below, the court finds that the circumstances of the COVID-19 pandemic diminish the risk that Mr. Ramos will flee pending trial, and that his continued detention poses a risk of danger to himself and others such that pretrial release is warranted subject to stringent conditions set forth below and in exhibit 3 hereto.  Accordingly, the defendant's motion is granted.

When Mr. Ramos was arrested, he reported to the court's Probation Department that he had diabetes and asthma.  In the defendant's motion and at the hearing, defense counsel represented that Mr. Ramos has diabetes and asthma, for which he is treated with albuterol and steroids, has been hospitalized in the past with influenza, and is overweight.  Defense counsel offered to produce the defendant's medical records.  Because Mr. Ramos reported asthma and diabetes in 2018 during his pretrial services interview when he had no incentive to exaggerate his medical problems, the court finds that Mr. Ramos has diabetes and moderate to severe asthma and deems in unnecessary to review the medical records at this time.

The Center for Disease Control currently represents that individuals with moderate to severe asthma "may be at higher risk of getting very sick from COVID-19" and that individuals with underlying medical conditions such as diabetes are at increased risk from the virus (Exh. 1).  According to the CDC, the best way to prevent illness in these individuals is to avoid being exposed to the virus (Exh. 1).  The defendant contends, and the court agrees, that incarceration increases his risk of exposure to the virus.  So far as the court is aware, there have not been any cases of COVID-19 among inmates or guards at the Hampden County House of Corrections in Ludlow (Ludlow HOC), where the defendant is being held.  The Ludlow HOC has taken

significant steps to protect staff, inmates, and the general public in response to the COVID-19 pandemic. Those steps are explained in a posting on the Ludlow HOC's website, a copy of which is attached hereto as exhibit 2. Nonetheless, it is not possible for a medically vulnerable inmate such as Mr. Ramos to isolate himself in this institutional setting as recommended by the CDC, and guards and newly arrested individuals must enter the facility on a daily basis. News articles report that, in jails and another house of corrections in the Commonwealth, there have been cases of COVID-19 among prisoners and/or guards.

The facts on which the court's May 2018 detention order was based have not changed and, absent the COVID-19 pandemic, there would be no basis for reconsideration of the court's order to detain Mr. Ramos pending trial. In the court's view, however, the pandemic changes the calculus. At this time, Mr. Ramos cannot travel without a significant risk of exposure to the virus with the potentially severe health consequences that would follow, and therefore cannot readily flee the district. The court found that Mr. Ramos was a danger to the community because of his history of distributing controlled substances. Attempting to engage in such an activity at this time would, again, likely require in-person contact with other individuals who may very well be contagious. Further, detaining Mr. Ramos in an institutional setting in close quarters with others poses a very serious risk to his health that the court should, and is, taking into consideration. In these circumstances, there are conditions of supervised release that can reasonably assure the defendant's future appearances in court and the safety of the community and Mr. Ramos.

The court accepts, for the most part, the conditions of pretrial release proposed by Mr. Ramos. He will be in home detention at his mother's residence at 36 Vernon Street in Holyoke. He may leave the residence only for purposes of medical appointments, if any. Home detention

will NOT be monitored by electronic means.  The supervising probation officer will monitor Mr. Ramos' compliance with the condition of home detention by placing random telephone calls to the landline in the home, with the schedule of such phone calls left to the discretion of the probation officer.  The court will sign a warrant to be held in abeyance and activated if the probation officer has reason to believe that Mr. Ramos has left the home.  Mr. Ramos will be in his mother's custody and his mother will post $25,000 in equity in her residence to ensure his future appearances.  The posting of this financial security will be complicated by the current circumstances and need not be finalized in advance of Mr. Ramos' release.  Other more standard conditions of pretrial release are addressed in the conditions attached hereto as exhibit 3.

For the foregoing reasons, Defendant's *Emergency* Motion for Pre-Trial Release Due to Risk of Complications From Potential COVID-19 Infection is granted.  The Clerk's Office is directed to set up a telephone conference to review the conditions of supervised release with Mr. Ramos as soon as possible.

It is so ordered.

Dated:  March 26, 2020                               /s/ Katherine A. Robertson
                                                     KATHERINE A. ROBERTSON
                                                     U.S. MAGISTRATE JUDGE